**In the Matter of Jerry CREEL, Nedrey E. Creel, Debtors.**

**HANCOCK BANK OF LOUISIANA, Plaintiff,**

v.

**DISTRICT DIRECTOR, INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY, UNITED STATES of America, Jerry Creel, Nedrey Creel, and S.J. Beaulieu, Jr., CH. 13 Trustee, Defendants.**

**Bankruptcy No. 95–14133.
Adversary No. 95–1223.**

United States Bankruptcy Court,
E.D. Louisiana.

April 29, 1997.

---

Claude C. Lightfoot, Jr., Metairie, LA, for Debtors.

John M. Bilheimer, U.S. Dept. of Justice, Washington, DC, Claude C. Lightfoot, Jr., Metairie, LA, for Defendants.

John David Ziober, Baton Rouge, LA, for Plaintiff.

### MEMORANDUM OPINION

THOMAS M. BRAHNEY, III, Bankruptcy Judge.

This matter came before the court on a Motion to Dismiss Adversary Proceeding or Alternatively for Adequate Protection filed by the Department of Justice ("DOJ") on behalf of the Internal Revenue Service ("IRS"). The Debtors, Jerry and Nedrey Creel, filed an Opposition to the Motion to Dismiss. The underlying adversary proceeding was initiated when Hancock Bank ("Hancock") filed an Adversary Complaint for Interpleader Relief. A hearing was held on the motion, at which time the Court heard the

statements of counsel. Upon consideration of the statements made, the record in the case and the applicable law, the Court will permit the turnover of the interpled funds to the IRS, for the reasons hereinafter stated.

On October 23, 1995, prior to the Debtors' filing for bankruptcy, the IRS served on Hancock a notice of levy alleging that the Debtors owed $434,595.00 to the IRS. At this time, the Debtors had accounts with Hancock totalling approximately $19,417.00. The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on November 2, 1995, which case was converted to Chapter 11 on January 22, 1996. On November 14, 1995, Debtors' counsel faxed a copy of the Voluntary Petition to Hancock. In response, Hancock informed the Debtors' counsel of the IRS Notice of Levy and of their belief that the Debtors had no equity interest in the accounts. Debtors' counsel responded by demanding immediate turnover of the account funds, along with threatening to move for contempt if Hancock turned the funds over to the IRS.

Hancock feared the IRS would hold it responsible for the value of the funds not delivered under the Notice of Levy. On the other hand, Hancock did not want to be open to a motion for contempt by the Debtors if turnover to the IRS was improper. Therefore, Hancock sought the instant interpleader relief, requesting permission to deposit the total account balances with the Bankruptcy Court Clerk, an injunction against any party holding Hancock responsible for the funds, and attorney's fees relating to the funds and their ownership. The Court permitted the funds to be deposited with the Clerk, which was done on January 11, 1996. On March 14, 1996, the Court permitted the Clerk to distribute to Hancock $1,600.34 for attorney's fees and expenses it incurred. Hancock is no longer involved in this adversary proceeding.

On February 14, 1997, the DOJ filed its present Motion. In the Motion, the DOJ states that the tax levy of October 23, 1995, transferred all rights and interests in the account funds to the IRS. Therefore, they argue, the Debtors had no interest in the property as of the filing date and it did not become property of the estate. Alternative-ly, the DOJ argues that the IRS is entitled to the funds as adequate protection for their secured claim.

In response, the Debtors argue that despite the tax levy, they still retained rights in the property and, therefore, the account funds should be turned over to the estate. The Debtors also argue that the funds are of great value in their efforts to reorganize. Finally, the Debtors claim that the government should have moved for adequate protection or to lift stay in the bankruptcy case itself, so that the instant Motion is not properly before the Court within this adversary proceeding.

■■■ Property of the estate held by a third party must be turned over to the trustee under the Bankruptcy Code. 11 U.S.C. § 542(a). The estate contains all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1). The question, therefore, is whether the IRS tax levy left the Debtors with sufficient interests in the property to allow transfer to the bankruptcy estate. The chief case in this area is *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Here, the Supreme Court ordered turnover of equipment used by the debtor in his business, which was seized but not sold by the IRS before the debtor filed for bankruptcy. The Court held that the debtor retained a sufficient ownership interest in the property until the IRS sold the equipment at a tax sale, as was manifested by the debtor's right to surplus proceeds. *Whiting Pools,* 462 U.S. at 210, 103 S.Ct. at 2316. As a result, the property returned to the bankruptcy estate and became subject to turnover. *Id.*

A question arises, however, as to whether the same result occurs when the property in question is cash or an equivalent. The issue has been considered by many courts, and two distinct lines of analysis have evolved since the *Whiting Pools* decision. On one side, courts have held that the residual property rights that were retained in *Whiting Pools* are inapplicable to account funds. Therefore, a debtor retains no interest in the property and the IRS need not turn over funds to the bankruptcy estate. See *e.g., Brown v.*

*Evanston Bank,* 126 B.R. 767 (N.D.Ill.1991); *In re Smiley,* 189 B.R. 338 (Bankr.E.D.Pa. 1995); *McLaughlin v. Internal Revenue Service,* 139 B.R. 9 (N.D.Ohio 1991); *In re Caldwell,* 111 B.R. 836 (Bankr.C.D.Cal.1990). Other courts, however, have maintained that cash and cash equivalents are subject to turnover because the debtor retains residual rights which allow inclusion in the bankruptcy estate. See, *e.g., United States v. Challenge Air International Inc.,* 952 F.2d 384 (11th Cir.1992); *Gendler v. United States,* 1993 WL 330636 (Bankr.E.D.La.1993); *Cleveland Graphic Reproduction, Inc.,* 78 B.R. 819 (Bankr.N.D.Ohio 1987); *In re AIC Industries, Inc.,* 83 B.R. 774 (Bankr.Colo. 1988).

■ This Court chooses to side with the latter line of cases. It does not appear that *all* rights of the Debtors in these funds have been lost as a result of the IRS's tax levy. First, the Supreme Court granted certiorari in *Whiting Pools* in order to resolve a conflict in the circuits between that case and *Cross Electric Co. v. United States,* 664 F.2d 1218 (1981). *Whiting Pools,* 462 U.S. at 202, 103 S.Ct. at 2312. *Cross Electric,* however, was a case dealing with an account receivable owed to the debtor company. 664 F.2d at 1219. The Supreme Court clearly felt that tangible property and accounts were to be considered under the same analysis or they would not have recognized the tension between these two decisions and granted certiorari precisely on that basis. *See Challenge Air,* 952 F.2d at 386–387. Second, the *Whiting Pools* decision did not rest on a distinction in the nature of the seized property, and the court rejected a contention that cash or cash equivalents should be treated differently. *Id.* at 387.

Third, the enforcement provisions of the Internal Revenue Code "do not transfer ownership of the property to IRS." *Id., citing Whiting Pools,* 462 U.S. at 210, 103 S.Ct. at 2316. *See United States v. Sullivan,* 333 F.2d 100, 116 (3d Cir.1964) (stating that the Commissioner, in seizing property, acts only as one holding a lien on that property). An argument that constructive possession of the right to payment obliterates all rights of the debtor, under *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), does not seem to preclude turnover to the debtor, as *ownership* of the property in question has not yet been determined. *Challenge Air,* 952 F.2d at 387. In this case, as ownership of the property has not been determined by the tax levy of the IRS, and because the Commissioner appears to be acting only as a lienholder in the collection of the property, this Court concludes that the former contents of the Debtor's bank accounts, now held in trust by the Clerk of Court, should be considered as property of the estate.

■ The Debtors, however, are not able to include these funds as property of the estate without any further effort on their part. A pre-petition tax levy does give the IRS a secured interest in the property of the debtor. Under Sections 363 and 361 of the Bankruptcy Code, the IRS is entitled to adequate protection of this interest. *Whiting Pools,* 462 U.S. at 209, 103 S.Ct. at 2315–16. Under Section 363, "cash collateral" includes cash and cash equivalents, including deposit accounts, in which the estate and another entity have an interest. 11 U.S.C. § 363(a). A debtor-in-possession, acting with the powers of a trustee, must get court authorization to use cash collateral in the operation of its business. 11 U.S.C. § 363(c)(2)(B). A court, however, will not allow such use unless adequate protection is provided to the secured creditor with an interest in the property. 11 U.S.C. § 363(e). Adequate protection may be provided by any of the following:

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that ... use sale or lease under section 363 of this title ... results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the

indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

The Debtors apparently have been providing their other secured creditors with monthly payments in order to protect their secured interests. The IRS, however, has not received any payments from the Debtors that would serve to protect a secured claim of over $84,300.00. Moreover, the Debtors do not deny that this is the case. Instead, they argue that the DOJ should have moved for adequate protection or a lifting of the automatic stay in the bankruptcy case. Without this procedure, they argue, this Court should not even consider this Motion.

■ This is an inaccurate statement of the procedures required for adequate protection in a bankruptcy proceeding. The creditor is not required to move for adequate protection at all. In actuality, the debtor must offer some form of adequate protection if required, to which the creditor may object and ask the court for a determination of adequacy. The Bankruptcy Code does not state, nor has this Court discovered a case that states, that a creditor is required to move for adequate protection on his secured claim within the main bankruptcy case if the debtor does not offer any. The court may consider this issue at any stage of the bankruptcy proceeding at which the creditor claims that it is a relevant issue.

■ Here, the Debtors are trying to retrieve the property held in trust by the Bankruptcy Clerk and make it property of the estate under Section 542. Presumably, they would then be able to petition the Court to be allowed to·use the collateral in the restructuring of their business. The IRS, however, holds a lien on the funds in question, and must be provided with adequate protection. The Debtors have not been making payments to the IRS in the past in order to maintain the value of the secured claim. Moreover, they have not offered any other sort of protection that may be recognized by this Court under Section 361 of the Bankruptcy Code. Under these circumstances, the Court will allow the IRS to take these interpled funds, deposited with the Clerk of

Court, as adequate protection of their secured claim in this bankruptcy case.

In their Motion to Dismiss or Alternatively for Adequate Protection, the DOJ made two other arguments. They claimed that the Debtors could not carry their burden to show that the tax liens were an avoidable preference under 11 U.S.C. § 547(c). They also argued that some of the named defendants (the IRS, the District Director, and the Department of the Treasury) are improper parties to this action. As this Court has decided this matter on the grounds of adequate protection, as stated above, the Court feels that these arguments are moot and need not be decided.

An appropriate order will be entered.